1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ALFREDO ESCOBAR,

11           Plaintiff,                    No.  2:  12-cv-0773 GEB DAD P

12       vs.

13   CHRISTOPHER SMITH, et al.,

14           Defendants.              FINDINGS AND RECOMMENDATIONS

15   _____/

16           Plaintiff is a state prisoner proceeding *pro se* with a civil rights complaint under

17   42 U.S.C. § 1983.  Plaintiff asserts that his Constitutional rights were violated during his

18   confinement when defendants refused to provide him effective pain treatment through

19   medication and refused to perform facial surgery to combat plaintiff's hemangiomas.[1]

20           The defendants, Christopher Smith and Scott Heatley, were ordered to respond to

21   the complaint.  On August 10, 2012, the defendants filed a motion to dismiss.  In their motion,

22   defendants admit that plaintiff exhausted his administrative remedies concerning the

23   discontinuance of his pain medication.  However, they argue that plaintiff's claim seeking

24   surgery to combat his hemangiomas is unexhausted and should therefore be dismissed.

25   _____

26        [1] Plaintiff states in the complaint that hemangiomas are recurrent tumors that appear on
     his face and neck.

                                        1

## I.  BACKGROUND[2]

Defendants Christopher Smith and Scott Heatley are employed as physicians at the Mule Creek State Prison in Ione, California.  Plaintiff has suffered from recurrent hemangiomas of the face and neck since he was a child.  While incarcerated in Mule Creek State Prison, defendants disapproved of plaintiff's surgical requests as well as discontinued his medications of Tramadol and Gabapentin that plaintiff had been taking to manage his pain associated with this condition.

Plaintiff states that he filed an inmate health care appeal in July 2011 which requested that Tramadol and Gabapentin be reinstated and for treatment for his tumor and cyst. He states that his second level appeal was denied on October 5, 2011.  Plaintiff's request for Tramadol was denied but his request to be prescribed Gabapentin was partially granted and he was started on a prescription for Gabapentin, 300 mg, three times a day.  Plaintiff's third level appeal was denied according to the allegations of the complaint.

Plaintiff seeks the following relief:  (1) injunctive relief in the form of proper medical treatment including a temporary restraining order restraining defendants from withholding Tramadol 50 mg three times a day and Gabapentin and ordering the defendants to perform surgery for his hemangiomas.  Plaintiff also requests general and punitive damages, costs and other relief as the court may deem just and proper.

## II.  DEFENDANTS' MOTION TO DISMISS

A.  Defendants Motion

Defendants move to dismiss plaintiff's claim that the defendants violated his Constitutional rights by rejecting surgery as a treatment option pursuant to non-enumerated Rule 12(b).  They assert that plaintiff failed to exhaust his administrative remedies with respect to this claim prior to filing his complaint.  Defendants contend that plaintiff only submitted one health

---

[2] The background is taken from the allegations of plaintiff's complaint which was filed in March 2012.

2

1   care related inmate grievance to the third level of review (Office of Third Appeals-Health Care

2   ("OTLA-HC")), MCSP-16-11-11311.  Defendants argue that this is plaintiff's only exhausted

3   grievance.  They state that plaintiff only complained about the discontinuance of his pain

4   medication in that inmate grievance.  Furthermore, they state that therein plaintiff only requested

5   to have his medications reinstated and for the medical staff to be properly trained.  According to

6   defendants, that inmate grievance does not allege that the defendants were deliberately indifferent

7   to his medical needs because they denied surgical requests and recommendations.  They also note

8   that plaintiff did not request surgery in that grievance.

9          B.  Plaintiff's Opposition

10                 Plaintiff argues that his grievance was about relieving pain and therefore his claim

11   for disapproval of surgery is exhausted.  Furthermore, he asserts that he attached medical records

12   to his grievance which showed that he periodically received a procedure called "ethanol

13   sclerotherapy" that reduces the tumors sizes and significantly reduces the pain caused by them.

14   According to plaintiff, these facts show that he properly exhausted this claim.

15          C.  Defendants' Reply

16                 In reply, defendants reiterate that plaintiff did not alert the prison staff to the

17   nature of the alleged wrong, namely the refusal to approve surgery in grievance MCSP-16-11-

18   11311.  With respect to plaintiff's contention that he attached medical records to that appeal,

19   defendants assert that plaintiff did not do so.  Instead, defendants assert, the medical records that

20   plaintiff relies on were in fact attached to his inmate grievance IA-16-2011-11188.  To the extent

21   that plaintiff relies on that grievance to argue that the claim is exhausted, defendants assert

22   plaintiff did not appeal it to the third-level after it was rejected at the first-level of review.

23   Finally, defendants argue that even if plaintiff had attached his medical records to inmate

24   grievance MCSP-16-11-11311, those records were insufficient to alert prison officials to the

25   nature of the wrong (disapproval of surgery) for which plaintiff was seeking redress.  The

26   /////

3

1  defendants note that plaintiff attached two medical records to his opposition to the motion to

2  dismiss.  Defendants state as follows with respect to these medical records:

3          One of the partial records appears to contain a medical
           professional's impression that a surgical procedure called ethanol-
4          schlerotherapy likely reduced the size of Plaintiff's hemangiomas
           on his cheek, lip, and chin in 2009.  These records merely show
5          that Plaintiff had facial hemangiomas and that he may have had a
           procedure in 2009 to reduce their size.  Even if these records were
6          submitted with inmate appeal MCSP-16-11-11311, they merely
           provided a limited amount of information concerning Plaintiff's
7          hemangiomas.  That information does not give notice of Plaintiff's
           claim that Defendants were deliberately indifferent for refusing to
8          approve surgery on facial hemangiomas.

9  (Dkt. No. 19 at p. 5.)

10                                    III.  ANALYSIS

11         By the Prison Litigation Reform Act of 1995 ("PLRA"), Congress amended 42

12 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions

13 under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

14 prison, or other correctional facility until such administrative remedies as are available are

15 exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement "applies to all inmate suits about

16 prison life, whether they involve general circumstances or particular episodes, and whether they

17 allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

18         The United States Supreme Court has ruled that exhaustion of prison

19 administrative procedures is mandated regardless of the relief offered through such procedures.

20 See Booth v. Chruner, 532 US. 731, 741 (2001).  The Supreme Court has also cautioned against

21 reading futility or other exceptions into the statutory exhaustion requirement.  See id. at 741 n. 6.

22 Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA

23 exhaustion requirement by filing an untimely or otherwise procedurally defective administrative

24 grievance or appeal.  See Woodford v. Ngo, 548 U.S. 81, 90-93 (2006).

25         In California, prisoners may appeal "any policy, decision, action, condition, or

26 omission by the department or its staff that the inmate or parolee can demonstrate as having a

material adverse effect upon his or her health, safety, or welfare." CAL. CODE REGS. tit. 15, §
3084.1(a). Appeals progress through three levels of review. See id. § 3084.7. The third level of
review constitutes the decision the Secretary of the California Department of Corrections and
Rehabilitation and exhausts a prisoner's administrative remedies. See id. § 3084.7(d)(3). A
California prisoner is required to submit an inmate appeal at the appropriate level and proceed to
the highest level of review available to him. See Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir.
2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

The PLRA exhaustion requirement is not jurisdictional but rather creates an
affirmative defense. See Jones v. Bock, 549 U.S. 199, 216 (2007) ("[I]nmates are not required to
specially plead or demonstrate exhaustion in their complaints."); Wyatt v. Terhune, 315 F.3d
1108, 1117-19 (9th Cir. 2003). The defendants bear the burden of raising and proving the
absence of exhaustion. See id. at 1119. When the district court concludes that the prisoner has
not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim
without prejudice." Id. at 1120; see also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005).
On the other hand, "if a complaint contains both good and bad claims, the court proceeds with
the good and leaves the bad." Jones, 549 U.S. at 221.

To satisfy the exhaustion requirement, a grievance need only provide the level of
detail required by the prison grievance system itself. See Jones, 549 U.S. at 218; Morton v. Hall,
599 F.3d 942, 946 (9th Cir. 2010) ("The level of detail in an administrative grievance necessary
to properly exhaust a claim is determined by the prison's applicable grievance procedures.").
The grievance process in California requires that the prisoner shall use CDCR Form 602 "to
describe the specific issue under appeal and the relief requested." CAL. CODE REGS. tit. 15, §
3084.2(a). When a prison's grievance procedures do not specify the requisite level of factual
detail needed, "a grievance suffices if it alerts the prison to the nature of the wrong for which
redress is sought." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).

/////

1        Plaintiff's inmate grievance MCSP-16-11-11311 did not exhaust his claim that

2  defendants were deliberately indifferent to his serious medical need by refusing him surgery.

3  Plaintiff was initially on the pain medication for which he now claims the defendants

4  unconstitutionally revoked.[3]   The Ninth Circuit has explained that a prisoner is not required to

5  allege every fact necessary to prove a legal claim in his administrative appeal.  See Griffin, 557

6  F.3d at 1120.  Instead, the Ninth Circuit has stated that "the primary purpose of a grievance is to

7  notify the prison of the problem and facilitate its resolution, not to lay the groundwork for

8  litigation."  See Griffin, 557 F.3d at 1120-21.  The inmate grievance that was exhausted through

9  the third level of review as required, MCSP-16-11-11311, notified prison officials of the problem

10  with respect to the decision to revoke plaintiff's pain medication.  It sought to resolve this issue

11  by requesting the reinstatement of that pain medication.  It did not, however, notify prison

12  officials that there was problem with the purported refusal of medical staff to perform surgery on

13  plaintiff.  Furthermore, that grievance never sought to facilitate the resolution of plaintiff's

14  grievance by requesting surgery.

15        The court is mindful that plaintiff need not allege every fact necessary to exhaust

16  his claim in his grievance.  However, plaintiff still must notify the prison of the specific issue

17  under appeal and seek to facilitate its resolution.  In this case, the specific problem/issue under

18  inmate appeal in MCSP-16-11-11311 was the decision of medical staff to revoke plaintiff's

19  medication.  Plaintiff complained about that decision and sought relief through the exhausted

20  inmate grievance.  The court does not find that plaintiff also exhausted the separate issue of his

21  alleged need for surgery.  Inmate grievance MCSP-16-11-11311 did not give prison officials a

22  fair opportunity to respond to a complaint that he was being wrongfully deprived of surgery.

23  That grievance provided no information with respect to surgery and did not include enough

24  information to allow prison officials to take appropriate responsive measures with respect to

25  _____

26        [3] As previously explained, the defendants agree that plaintiff has exhausted this claim.

1   surgery.  See Griffin, 557 F.3d at 1121 (finding a failure to exhaust as required where an inmate

2   grievance did not provide sufficient information to allow prison officials to take appropriate

3   responsive measures).  While a somewhat close case, the court finds that under these

4   circumstances, plaintiff's inmate grievance MCSP-16-11-11311 was insufficient to put prison

5   officials on notice that plaintiff was complaining that he needed surgery.

6          In his opposition to the pending motion to dismiss, plaintiff relies on the medical

7   reports he purportedly attached to inmate grievance MCSP 16-11-11311.  However, it appears

8   that these documents were in fact attached to his inmate grievance IA-16-2011-11188 that was

9   never exhausted to the third-level.  (See Dkt. No. 17 Ex. 2; Decl. McLean ¶ 4.)  Instead, that

10  inmate grievance was rejected at the first-level, (see Dkt. No. 17 Decl. McLean ¶ 4.).  Any issues

11  raised in that grievance are unexhausted because plaintiff never pursued that grievance through

12  the third-level of review.

13         Furthermore, the court notes that even if the medical documents were attached to

14  the inmate appeal that was exhausted, MCSP-16-11-11311, they did not provide sufficient

15  information to allow prison officials to take the appropriate responsive measures on the issue of

16  surgery.  Rather, these documents would have merely put the prison staff on notice that plaintiff

17  previously had surgery for his hemangiomas.  Attaching the records to the inmate grievance may

18  have lent support to a continuation of plaintiff's pain medication.  However, they would not have

19  put prison staff on notice that plaintiff was seeking further surgery which the prison medical staff

20  had refused.  Accordingly, the defendants' motion to dismiss plaintiff's claim that his right to

21  constitutionally adequate medical care was violated when surgery was not performed for his

22  condition should be granted based on plaintiff's failure to exhaust administrative remedies with

23  respect to that claim prior to filing this action.

24  /////

25  /////

26  /////

## IV.  MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff has also filed a motion for a preliminary injunction.  Therein, he requests an order requiring defendants to provide him with surgery for his hemangiomas as well as effective pain medication.

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Natural Res. Def. Council, 555 U.S. 7, 22 (2008).  "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting Winter, 555 U.S. at 20); see also Ctr. for Food Safety v. Vilsack, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After Winter, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.").  The Ninth Circuit has also held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor."[4]  Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (internal quotation marks and citation omitted).  In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm."  18 U.S.C. § 3626(a)(2).

With respect to plaintiff's request for injunctive relief requiring that he be provided surgery, the court has already determined that plaintiff has failed to exhaust his

---

[4] The Ninth Circuit has found that this "serious question" version of the circuit's sliding scale approach survives "when applied as apart of the four-element Winter test."  Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011).  "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  Id. at 1135.

1  administrative remedies with respect to this claim.  Accordingly, he has failed to show that he is

2  likely to succeed on the merits as to that request for injunctive relief.

3       Additionally, plaintiff's request for preliminary injunctive relief requiring that he

4  be provided effective pain medication will also be denied.  Plaintiff admits in his complaint that a

5  request for further pain medication was granted in part in September 2011.  More specifically,

6  the complaint before the court alleges that plaintiff was started on a prescription for Gabapentin

7  300 mg capsules, one capsule, three times a day for pain in September 2011.  (See Dkt. No. 1 at

8  p. 6.)  The court also notes that plaintiff's general disagreement with the medical treatment he

9  has received is not enough to establish deliberate indifference on the part of prison officials.  See

10  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).  Accordingly, plaintiff fails to show at

11  this stage of the litigation that he is likely to succeed on the merits so as to warrant the granting

12  of preliminary injunctive relief with respect to this claim.  Therefore, plaintiff's motion for a

13  preliminary injunction should be denied.

14                                    CONCLUSION

15       Accordingly, IT IS HEREBY RECOMMENDED that:

16       1.  Plaintiff's motion for a preliminary injunction (Dkt. No. 11.) be denied; and

17       2.  Defendant's motion to dismiss plaintiff's claim that the defendants were

18  deliberately indifferent to his serious medical need in refusing to treat his condition surgically

19  (Dkt. No. 17) be granted on the grounds that plaintiff failed to exhaust his administrative

20  remedies with respect to that claim.

21       These findings and recommendations are submitted to the United States District

22  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

23  days after being served with these findings and recommendations, any party may file written

24  objections with the court and serve a copy on all parties.  Such a document should be captioned

25  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

26  shall be served and filed within fourteen days after service of the objections.  The parties are

1   advised that failure to file objections within the specified time may waive the right to appeal the

2   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3   DATED: November 6, 2012.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

8   DAD:dpw
    esco0773.57(a)

10