UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFREDO ESCOBAR, | No. 2:12-cv-0773 GEB DAD P |
| Plaintiff, | |
| v. | <u>ORDER AND</u> |
| CHRISTOPHER SMITH et al., | <u>FINDINGS AND RECOMMENDATIONS</u> |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983. This matter is before the court on defendants' motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has filed an opposition to the motion, and defendants have filed a reply. For the reasons discussed below, the court will recommend that defendants' motion for summary judgment be denied.[1]

---

[1] On November 7, 2013, the undersigned issued findings and recommendations, recommending that defendants' motion for summary judgment be denied. Therein, the undersigned addressed plaintiff's claim that defendants were deliberately indifferent to his serious medical needs when they disapproved of his prior treating physicians' surgical recommendations for his hemangiomas. Defendants filed objections to the November 7, 2013 findings and recommendations, in part by correctly noting that the court had previously dismissed this aspect of plaintiff's claim because he had failed to exhaust his administrative remedies as to that claim prior to bringing suit as required. (Doc. No. 22.) Upon further review, the undersigned agrees. Accordingly, the court will vacate the November 7, 2013, findings and recommendations, and proceed in accordance with this order and findings and recommendations.

1

# BACKGROUND

Plaintiff is proceeding on his original complaint in this civil rights action. Therein, plaintiff alleges that he has long suffered from recurrent, multiple, painful tumors of the face and neck, diagnosed as hemangiomas. According to plaintiff, prison officials at Calipatria State Prison transferred him to Mule Creek State Prison ("MCSP"), believing he would receive more effective medical care there because of its "hospital" status. Plaintiff alleges, however, that when he arrived at MCSP, defendants Dr. Heatley and Dr. Smith disapproved of Calipatria physicians' surgical requests and recommendations and discontinued his pain medication. Plaintiff claims that the defendants violated his rights under the Eighth Amendment and requests injunctive relief and monetary damages. (Pl.'s Compl. at 2-8.)

# PROCEDURAL HISTORY

On August 10, 2012, defendants Dr. Heatley and Dr. Smith filed a motion to dismiss on the grounds that plaintiff failed to exhaust his claim that defendants disapproved of his surgical requests for his hemangiomas prior to filing suit as required. Defendants conceded that plaintiff had exhausted his claim that the defendants improperly discontinued his pain medication. On November 7, 1012, the undersigned issued findings and recommendations, recommending that defendants' motion to dismiss be granted. (Doc. No. 20.) On December 14, 2012, the assigned district judge adopted those findings and recommendations in full. (Doc. No. 22.) On December 31, 2012, defendants filed an answer, and on January 8, 2013, the court issued a discovery and scheduling order in this case. (Doc. Nos. 24 & 25.) Now pending before the court is defendants' motion for summary judgment. (Doc. No. 26.)

# SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

1   The moving party may accomplish this by "citing to particular parts of materials in the record,
2   including depositions, documents, electronically store information, affidavits or declarations,
3   stipulations (including those made for purposes of the motion only), admission, interrogatory
4   answers, or other materials" or by showing that such materials "do not establish the absence or
5   presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to
6   support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden
7   of proof at trial, "the moving party need only prove that there is an absence of evidence to support
8   the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.).
9   See also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after
10  adequate time for discovery and upon motion, against a party who fails to make a showing
11  sufficient to establish the existence of an element essential to that party's case, and on which that
12  party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure
13  of proof concerning an essential element of the nonmoving party's case necessarily renders all
14  other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so
15  long as whatever is before the district court demonstrates that the standard for entry of summary
16  judgment, . . ., is satisfied." Id. at 323.

17      If the moving party meets its initial responsibility, the burden then shifts to the opposing
18  party to establish that a genuine issue as to any material fact actually does exist. See Matsushita
19  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the
20  existence of this factual dispute, the opposing party may not rely upon the allegations or denials
21  of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or
22  admissible discovery material, in support of its contention that the dispute exists. See Fed. R.
23  Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the
24  fact in contention is material, i.e., a fact that might affect the outcome of the suit under the
25  governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,
26  Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is
27  genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving
28  party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## OTHER APPLICABLE LEGAL STANDARDS

I. Civil Rights Act Pursuant to 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

/////

4

omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II. The Eighth Amendment and Inadequate Medical Care

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

Where a prisoner's Eighth Amendment claims arise in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id.

1  at 1059-60.  By establishing the existence of a serious medical need, a prisoner satisfies the
2  objective requirement for proving an Eighth Amendment violation.  <u>Farmer v. Brennan</u>, 511 U.S.
3  825, 834 (1994).

4       If a prisoner establishes the existence of a serious medical need, he must then show that
5  prison officials responded to the serious medical need with deliberate indifference.  <u>See</u> <u>Farmer</u>,
6  511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials deny,
7  delay, or intentionally interfere with medical treatment, or may be shown by the way in which
8  prison officials provide medical care.  <u>Hutchinson v. United States</u>, 838 F.2d 390, 393-94 (9th
9  Cir. 1988).  Before a prisoner's civil rights have been abridged with regard to medical care,
10 however, "the indifference to his medical needs must be substantial.  Mere 'indifference,'
11 'negligence,' or 'medical malpractice' will not support this cause of action."  <u>Broughton v. Cutter</u>
12 <u>Laboratories</u>, 622 F.2d 458, 460 (9th Cir. 1980) (citing <u>Estelle</u>, 429 U.S. at 105-06).  <u>See</u> <u>also</u>
13 <u>Toguchi v. Soon Hwang Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in
14 diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth
15 Amendment rights."); <u>McGuckin</u>, 974 F.2d at 1059 (same).  Deliberate indifference is "a state of
16 mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for
17 the prisoner's interests or safety.'"  <u>Farmer</u>, 511 U.S. at 835 (quoting <u>Whitley</u>, 475 U.S. at 319).

18      Delays in providing medical care may manifest deliberate indifference.  <u>Estelle</u>, 429 U.S.
19 at 104-05.  To establish a claim of deliberate indifference arising from delay in providing care, a
20 plaintiff must show that the delay was harmful.  <u>See</u> <u>Berry v. Bunnell</u>, 39 F.3d 1056, 1057 (9th
21 Cir. 1994); <u>McGuckin</u>, 974 F.2d at 1059; <u>Wood v. Housewright</u>, 900 F.2d 1332, 1335 (9th Cir.
22 1990); <u>Hunt v. Dental Dep't</u>, 865 F.2d 198, 200 (9th Cir. 1989); <u>Shapley v. Nevada Bd. of State</u>
23 <u>Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985).  In this regard, "[a] prisoner need not show
24 his harm was substantial; however, such would provide additional support for the inmate's claim
25 that the defendant was deliberately indifferent to his needs."  <u>Jett v. Penner</u>, 439 F.3d 1091, 1096
26 (9th Cir. 2006).  <u>See</u> also <u>McGuckin</u>, 974 F.2d at 1060.

27      Finally, mere differences of opinion between a prisoner and prison medical staff or
28 between medical professionals as to the proper course of treatment for a medical condition do not

give rise to a § 1983 claim. See Snow v. McDaniel, 681 F.3d 978, 988 (9th Cir. 2012); Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

III.  Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights. Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a court is presented with a qualified immunity defense, the central questions for the court are:  (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established."  Saucier v. Katz, 533 U.S. 194, 201 (2001).

The United States Supreme Court has held that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."  Pearson v. Callahan, 555 U.S. 223, 236 (2009).  In this regard, if a court decides that plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity."  Saucier, 533 U.S. at 201.  Likewise, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity at that point without determining whether the allegations in fact make out a statutory or constitutional violation.  Pearson, 555 U.S. at 236-242.

"A government official's conduct violate[s] clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'"  Ashcroft v. al-Kidd, 563 U.S.___, ___131 S. Ct. 2074, 2083 (2011) (quoting Anderson v. Creighton, 483 U.S. 635 (1987)).  In this regard, "existing precedent must have placed the statutory or constitutional question beyond debate."  Id.  See also Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) ("The proper inquiry focuses on . . . whether the state of the law [at the relevant time] gave 'fair warning' to the officials that their conduct was unconstitutional.") (quoting Saucier, 533 U.S. at 202).  The inquiry must be undertaken in light of the specific context of the particular case.

Saucier, 533 U.S. at 201.  Because qualified immunity is an affirmative defense, the burden of proof initially lies with the official asserting the defense.  See Harlow, 457 U.S. at 812.

**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND EVIDENCE**

The evidence submitted by the defendants in support of their motion for summary judgment establishes the following.  At all relevant times to this suit, defendant Dr. Heatley was the Chief Medical Executive at MCSP and defendant Dr. Smith was the Chief Physician and Surgeon at MCSP.  (Defs.' SUDF 2-3, Heatley Decl., Pl.'s Compl.)

Plaintiff has had hemangiomas since he was a child.  A hemangioma is a benign tumor made up of blood vessels.  A lay term for a hemangioma is a birth mark.  Plaintiff's hemangiomas are located on the left side of his face along the jaw line, the front of his neck, his tongue, and his lip. On April 22, 2011, plaintiff arrived at MCSP from Calipatria State Prison and received a medical evaluation.  (Defs.' SUDF at 4-8, Heatley Decl., Pl.'s Compl.)

Before arriving at MCSP, plaintiff had a prescription for 800 mg of gabapentin three times a day.  Gabapentin is a medication that was originally developed to treat seizure disorders such as epilepsy.  It is also used to treat neuropathic pain.  Neuropathic pain is pain from inflamed or damaged nerves.  Plaintiff also had a prescription for 50 mg of tramadol.  Tramadol is an opioid analgesic or a medication to treat moderate to severe pain.  Plaintiff believes that a combination of gabapentin and tramadol is the most effective way to relieve the pain he experiences from his condition without causing any side effects.  (Defs.' SUDF at 8-15, Heatley Decl., Pl.'s Compl.)

When plaintiff arrived at MCSP, Dr. Rudas continued plaintiff's prescription for 800 mg of gabapentin three times a day and his prescription for 50 mg of tramadol twice a day as needed. On May 19, 2011, plaintiff's primary care provider evaluated him and requested that prison officials send him to an outside dermatologist.  Plaintiff's prescriptions for gabapentin and tramadol expired on May 22, and June 8, 2011, respectively.  (Defs.' SUDF at 16-19, Heatley Decl.)

On June 13, 2011, his primary care provider performed a pain intake evaluation on plaintiff.  At that time, the left side of plaintiff's face was diffusely enlarged along his jaw and the front portion of his neck.  Plaintiff's tongue and left lip had mild enlargement, and he reported a

pain level of 10 on a 1-10 scale (with 10 being maximum pain). Plaintiff indicated that gabapentin and tramadol help a little to alleviate the pain from his hemangiomas. Plaintiff appeared to be comfortable and functioning well during the evaluation according to his primary care provider. The areas of plaintiff's reported facial pain were non-tender to the touch and had reduced sensation. Plaintiff's primary care provider referred plaintiff's case to MCSP's Pain Management Committee ("PMC"). (Defs.' SUDF at 20-27, Heatley Decl.)

The PMC is made up of physicians and mid-level health-care providers. An inmate's primary care provider can request assistance from the PMC in the diagnosis and/or management of the inmate's chronic pain issues. The PMC makes a recommendation after reviewing an inmate's Unified Health Record ("UHR") and consulting with his primary care providers. An inmate's UHR contains records of his entire health history since incarceration. The PMC's recommendation may be to pursue a specific diagnostic and/or therapeutic direction. A PMC recommendation is reviewed by the referring provider who can choose to either follow or disregard it. (Defs.' SUDF at 28-33, Heatley Decl.)

On July 9, 2011, plaintiff submitted an inmate health care appeal requesting a prescription for tramadol and gabapentin. On August 12, 2011, Dr. Hashimoto interviewed plaintiff in connection with his July 9, 2011, inmate health care appeal. Dr. Hashimoto informed plaintiff that the PMC was going to evaluate his case and offer its opinion as to what should be done to manage his pain. (Defs.' SUDF 34-36, Heatley Decl., Pl.'s Compl.)

On August 18, 2011, plaintiff had a chronic care follow-up appointment for his pain with defendant Dr. Heatley. Plaintiff's chief complaint was that he was experiencing pain from his hemangiomas. Plaintiff requested a prescription of morphine, tramadol, or gabapentin to treat his pain. Based on defendant Dr. Heatley's examination and observation of plaintiff, Dr. Heatley determined that morphine, tramadol, and gabapentin were not medically indicated for his condition. Other than the August 18, 2011, appointment, defendant Dr. Heatley did not personally treat plaintiff in 2011. (Defs.' SUDF 37-41, Heatley Decl.)

On September 2, 2011, a dermatologist evaluated plaintiff and opined that the only reasonable course of treatment for his hemangiomas was pain relief. Plaintiff received a

1   prescription for gabapentin after that dermatology appointment. (Defs.' SUDF 42-43, Heatley
2   Decl.)
3       On September 8, 2011, MCSP's PMC reviewed plaintiff's case. At the time, defendant
4   Dr. Smith served as a member of the PMC. The PMC concluded that plaintiff did not suffer from
5   severe pain. Rather, the PMC determined that plaintiff's pain intake evaluation showed that he
6   had a mild to moderate sensory neuropathy. The PMC determined that plaintiff was functional
7   and able to perform his major activities of daily living and education. The PMC found that
8   tramadol and gabapentin were not medically indicated for plaintiff's condition. The PMC
9   discontinued plaintiff's prescription for gabapentin and advised plaintiff's primary care provider
10  to discuss alternative pain medications with him. Defendant Dr. Smith had no personal
11  involvement in plaintiff's medical care other than serving as a member of the PMC. (Defs.'
12  SUDF 44-52, Heatley Decl.)
13      On November 11, 2011, plaintiff was offered medications to reduce his pain, such as
14  amitriptyline, duloxetine, acetaminophen, and nonsteroidal anti-inflammatory drugs. Plaintiff
15  refused those alternative pain medications. Plaintiff continues to suffer mild to moderate pain as
16  a result of his hemangiomas. According to defendant Dr. Heatley, plaintiff does not have a
17  medical need for tramadol or gabapentin to treat his pain and is able to function without the pain
18  medications. (Defs.' SUDF 53-57, Heatley Decl., Pl.'s Compl.)
19      According to defendant Dr. Heatley, he as well as defendant Dr. Smith and all of
20  plaintiff's other health care providers at MCSP exercised the degree of skill, knowledge, and care
21  in treating and managing plaintiff's pain that is ordinarily possessed and exercised by other
22  members of the medical profession under similar circumstances. In Dr. Heatley's view, plaintiff
23  received medically acceptable treatment for his hemangiomas. (Defs.' SUDF 58-61, Heatley
24  Decl.)

25                                  **ANALYSIS**

26      Plaintiff's sole remaining claim in this action is that the defendants were deliberately
27  indifferent to his serious medical needs when they "discontinued" his prescription pain
28  medications for gabapentin and tramadol. (Pl.'s Compl. at 5-7.) Below, the court will address the

merits of defendants' motion for summary judgment on plaintiff's Eighth Amendment claim. The court will also address defendants' argument that they are entitled to qualified immunity. Based on all of the evidence presented in connection with the pending motion for summary judgment, and for the reasons stated below, the undersigned concludes that defendants' motion for summary judgment should be denied.

I. Plaintiff's Eighth Amendment Claim

       As an initial matter, the court finds, and defendants concede for purposes of summary judgment, that based upon the evidence presented by the parties in connection with the pending motion for summary judgment, a reasonable juror could conclude that plaintiff's hemangiomas constitute an objective, serious medical need. See McGuckin, 974 F.2d at 1059-60 ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."); see also Canell v. Bradshaw, 840 F. Supp. 1382, 1393 (D. Or. 1993) (the Eighth Amendment duty to provide medical care applies "to medical conditions that may result in pain and suffering which serve no legitimate penological purpose."). Specifically, plaintiff's well-documented medical history, as well as the observations and treatment recommendations by plaintiff's treating physicians and prison officials compel the conclusion that plaintiff's medical condition, if left untreated, could result in "further significant injury" and the "unnecessary and wanton infliction of pain." McGuckin, 974 F.2d at 1059.

       The court now turns to defendants' response to plaintiff's serious medical needs. It is questionable whether defendants have met their initial burden of demonstrating that there is no genuine issue of material fact with respect to the adequacy of the medical care provided to plaintiff. However, even assuming for the sake of argument that defendants have borne their initial burden, on defendants' motion for summary judgment the court is required to believe plaintiff's evidence and draw all reasonable inferences from the facts before the court in plaintiff's favor. Drawing all reasonable inferences from the evidence in plaintiff's favor, the

court finds that there is sufficient evidence before the court on summary judgment to demonstrate the existence of a genuine issue of material fact with respect to plaintiff's claim that defendants Dr. Heatley and Dr. Smith responded to his serious medical needs with deliberate indifference.

According to plaintiff's medical records submitted by defendants on summary judgment, as early as November/December 2009 when plaintiff was still incarcerated at Calipatria State Prison, plaintiff's medical providers prescribed him gabapentin and tramadol for pain relief. (Defs.' Mot. for Summ. J., Ex. A (Pt. 1 at 71-75).) On February 28, 2011, two months prior to plaintiff's transfer to MCSP, the Calipatria PMC met and outlined a treatment plan for plaintiff. (Id. (Pt. 1 at 77-78)) The Calipatria PMC plan included continuing plaintiff's pain medication prescriptions for gabapentin and tramadol. (Id.) Even upon plaintiff's arrival at MCSP, Dr. Rudas continued plaintiff's prescription for gabapentin three times a day and his prescription for of tramadol twice a day as needed. (Heatley Decl.) On May 19, 2011, plaintiff's primary care provider evaluated him and requested that prison officials send plaintiff to an outside dermatologist. (Id.) While plaintiff waited to see the dermatologist, plaintiff's prescriptions for gabapentin and tramadol expired on May 22, and June 8, 2011, respectively. (Id.) On August 18, 2011, plaintiff saw defendant Dr. Heatley with a primary complaint of pain. (Id.) It was not until that time that Dr. Heatley determined that in his opinion tramadol and gabapentin were not medically indicated. (Id.)

On September 2, 2011, plaintiff saw Dr. Ely, a dermatologist, at U.C. Davis Medical Center. Dr. Ely wrote to defendant Dr. Heatley and recommended the following treatment plan:

> This patient has failed sclerotherapy. The vascular tumor is too deep for laser therapy and involves much of the tongue. I think the only hope for this man is pain relief. Since he did well on Neurontin and Trazadol, this is what I would try first. I would give Neurontin (gabapentin) 300 mg p.o. t.i.d. If this is all he needs, he should stay on it for life. If not I would add Trazadol in an appropriate dose.

(Pl.'s Opp'n to Defs.' Mot. for Summ. J., Ex. A.) Six days later, on September 8, 2011, contrary to Dr. Ely's express opinion, defendant Dr. Smith and the other members of the MCSP PMC reviewed plaintiff's case and concluded that tramadol and gabapentin were not medically

/////

indicated for his condition and unilaterally discontinued Dr. Ely's prescription for gabapentin. (Heatley Decl.)

On December 21, 2011, plaintiff saw Dr. Ely once more. Thereafter, Dr. Ely wrote to defendant Dr. Heatley again and said:

> [Plaintiff] suffers from pain from his hereditary hemangioma in his jaw and apparently the prison system does not want to treat him with trazodone and gabapentin, which had been working in the past. I would suggest that you refer this patient to your pain committee for appropriate pain management. As a dermatologist, I do not think I can offer him anything other than what has worked in the past.

(Pl.'s Opp'n to Defs.' Mot. for Summ. J., Ex. A.) According to defendant Dr. Heatley, plaintiff still suffers from mild to moderate pain as a result of his hemangiomas, but in the defendant Dr. Heatley's view, plaintiff nonetheless does not have a medical need for tramadol or gabapentin. (Heatley Decl.)

As defense counsel argues, mere differences of opinion between a prisoner and prison medical staff or between medical professionals does not give rise to liability on a § 1983 claim. See Snow, 681 F.3d 987; see also Toguchi, 391 F.3d at 1059-60 ("Dr. Tackett's contrary view was a difference of medical opinion, which cannot support a claim of deliberate indifference."); Sanchez, 891 F.2d at 242 (difference of opinion between medical personnel regarding the need for surgery does not amount to deliberate indifference to a prisoner's serious medical needs). Ultimately, defense counsel may prove this case is simply one about a mere difference of opinion between physicians. On the other hand, plaintiff may well be able to establish that this is instead a case in which the defendants deliberately ignored his various treating physicians' (both outside of and at Calipatria State Prison) prescriptions for pain medication. As discussed above, physicians at Calipatria State Prison had long prescribed plaintiff gabapentin and trazadol for pain relief. In addition, Dr. Ely, an outside dermatologist MCSP doctors sent plaintiff to see, prescribed him the same medication. Notwithstanding, defendants refused to provide plaintiff with gabapentin or trazadol for pain relief even though, according to Dr. Ely, that course of treatment had proven to be effective and essentially was the only course of medical treatment available for plaintiff's condition. Based on the evidence in this case presented at the summary

judgment stage, the court finds that plaintiff has raised triable issues of fact as to whether defendant's refusal to provide him with gabapentin and trazadol was medically unacceptable.

It is well established that deliberate indifference may be shown when prison officials ignore express orders from a prisoner's treating physician(s) and/or when prison officials purposefully ignore or fail to respond to a possible serious medical need. See Estelle, 429 U.S. at 104-05 (deliberate indifference may manifest "by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed"); Snow, 681 F.3d at 988 (non-treating, non-specialist physicians may have been deliberately indifferent to prisoner's needs when they repeatedly denied outside specialists' recommendations for hip-replacement surgery); Jett, 439 F.3d at 1097-98 (prison doctor may have been deliberately indifferent to a prisoner's medical needs when he decided not to request an orthopedic consultation as the prisoner's emergency room doctor had previously ordered); Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000) (a prisoner may establish deliberate indifference by showing that a prison official intentionally interfered with his medical treatment); Wakefield v. Thompson, 177 F.3d 1160, 1165 & n.6 (9th Cir. 1999) ("a prison official acts with deliberate indifference when he ignores the instructions of the prisoner's treating physician or surgeon."); McGuckin, 974 F.2d at 1061 ("the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established 'deliberate indifference' on the part of the defendant.").

In sum, based on the record in this case, the court finds that a reasonable jury could conclude that defendants were deliberately indifferent to plaintiff's serious medical needs. Accordingly, defendants' motion for summary judgment on plaintiff's Eighth Amendment claim should be denied.

II. Qualified Immunity

The court will now address defense counsel's contention that the defendants are entitled to qualified immunity with respect to plaintiff's Eighth Amendment claim. Viewing the facts of this case in the light most favorable to the plaintiff, defendants violated plaintiff's constitutional

rights. As discussed above, deliberate indifference may be shown when prison officials ignore express orders from treating physicians and/or when prison officials purposefully ignore or fail to respond to a serious medical need. See Snow, 681 F.3d at 988; McGuckin, 974 F.2d at 1060.

Moreover, by 2011, when defendants' involvement in plaintiff's medical treatment took place, "the general law regarding the medical treatment of prisoners was clearly established," and "it was also clearly established that [prison staff] could not intentionally deny or delay access to medical care." Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002). In this regard, defendants should have known that ignoring express orders from plaintiff's treating physician(s) and/or purposefully ignoring or failing to respond to his serious medical needs violated his rights under the Eighth Amendment. Accordingly, defendants' motion for summary judgment based on the affirmative defense of qualified immunity should also be denied.

## CONCLUSION

IT IS HEREBY ORDERED that the court's November 7, 2013 findings and recommendations are vacated;

IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (Doc. No. 26) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 5, 2013

*/s/ Dale A. Drozd*
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
esco0773.57(2)